UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cr-60250-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROLANDO RODRIGUEZ-CAMPANA,

    Defendant.
_____/

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Rolando Rodriguez-Campana's ("Defendant") Motion for Sentence Reduction under 18 U.S.C. § 3582(c), ECF No. [148] ("Motion"). The Government filed its Response, ECF No. [155], and a Supplemental Response, ECF No. [156], to which Defendant has not filed a Reply. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

### I. BACKGROUND

On January 25, 2019, Defendant pled guilty to conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. ECF No. [16]; Plea Agreement, ECF No. [64]. On May 1, 2019, this Court sentenced Defendant to a total term of imprisonment of 45 months, followed by 3 years of supervised release. ECF No. [126]. Defendant is currently housed at Correctional Institution at Moshannon Valley in Phillipsburg, Pennsylvania

("Moshannon Valley"). ECF No. [155] at 11. Defendant is scheduled to be released from custody on November 15, 2021.

In the Motion, Defendant requests a sentence reduction due to the ongoing COVID-19 pandemic, arguing that the conditions at Moshannon Valley and his underlying medical conditions—namely, hypertension, high cholesterol, cardiac risk factors, prediabetes, hemoptysis, pneumonia, difficulty breathing, and prior lung surgery—put him at risk of suffering severe complications if he were to contract COVID-19. ECF Nos. [148] and [155-1]. The Government opposes the Motion, arguing that compassionate release is not warranted in this case because Defendant's medical conditions do not present extraordinary and compelling reasons and because his immigration status is fatal to his request for relief.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 27,417,468 confirmed cases and 482,536 reported deaths as of February 14, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Feb. 14, 2021).

("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently

3

been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant here seeks compassionate release, pursuant to § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>     (i) extraordinary and compelling reasons warrant such a reduction . . . .
>     . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

As has been recognized by various courts, the Sentencing Commission ("Commission") has not implemented a new policy statement following the First Step Act. *See United States v. Brown*, 411 F. Supp. 3d 446, 449 n.1 (S.D. Iowa 2019) (collecting cases). Rather, the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.4 (U.S.

Sent'g Comm'n 2018).

> This leaves district courts in a conundrum. On the one hand, Congress unequivocally said it wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with *applicable* policy statements" from the Sentencing Commission. § 3582(c)(1)(A) (emphasis added). On the other hand, the Commission—unable to take any official action—has not made the policy statement for the old regime applicable to the new one.

*Id.* at 449.

While the Court of Appeals for the Eleventh Circuit has yet to address the issue,[2] four other circuits have recognized that the Commission lacks an applicable policy statement for when a district court can grant compassionate release, and have accordingly held that § 1B1.13 does not apply to cases where a defendant files a motion for compassionate release, rather than the BOP. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020) ("[T]hough motions by the BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020) ("By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."); *United States v. Jones*, 980 F.3d 1098, 1108-09 (6th Cir. 2020) ("[T]he passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release."); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020) ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

---

[2] *See United States v. Abreu*, No. 20-12208, 2020 WL 7774951, at *1 n.1 (11th Cir. Dec. 30, 2020) (noting that the Eleventh Circuit has "not issued a published opinion addressing several key issues about the First Step Act's recent amendments to § 3582(c)(1)(A)—like, for example, the standard of review, any procedural and jurisdictional requirements, or the definition of 'extraordinary and compelling circumstances'—although several cases have been classified for oral argument to resolve these questions. *See, e.g.*, *United States v. McKreith*, appeal no. 20-10450; *United States v. Bryant*, appeal no. 19-14267; *United States v. Friedlander*, appeal no. 19-13347.").

deferential appellate review.").

> Courts across the country . . . still rely on § 1B.1.13 for guidance as to the "extraordinary and compelling reasons" that may warrant a sentence reduction. *See* [*United States v. Drummond*, No. 1:97-cr-0019 (N.D. Ga. Sept. 27, 2019)] (viewing § 1B.1.13 as "non-binding guidance"); *see also United States v. Solis*, No. 16-015-CG-MU, 2019 WL 2518452, at *2-3 (S.D. Ala. June 18, 2019); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). However, the Court is not *limited* to the technical requirements set forth in § 1B1.13 in assessing whether a defendant's application for compassionate release provides "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i). *See, e.g.*, [*United States v. Ullings*, No. 1:10-cr-00406, 2020 WL 2394096, at *2 (N.D. Ga. May 12, 2020)] (citing *United States v. Perez*, 451 F. Supp. 3d 288, 294 (S.D.N.Y. 2020)); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); [*United States v. Beard*, No. 1:16-CR-285-SCJ (N.D. Ga. June 25, 2020); *United States v. Kowalewski*, No. 2:13-CR-00045-RWS (N.D. Ga. Apr. 30, 2020); *United States v. Hill*, No. 1:05-CR-0081-LMM (N.D. Ga. June 10, 2020); *United States v. Noble*, No. 1:09-CR-315-MHC (N.D. Ga. Nov. 24, 2020)].

*United States v. Poulnott*, --- F. Supp. 3d ---, No. 1:89-cr-00001-AT-ALC-1, 2020 WL 7974295, at *3 (N.D. Ga. Dec. 30, 2020).

Upon review, the Court agrees with the reasoning of the Circuit Courts across the country that district courts are not bound by § 1B1.13. The Court further notes that this reasoning seemingly complements the Eleventh Circuit's recent observation that the policy statement in § 1B1.13 "'notably' has not been updated since the passage of the First Step Act and refers only to motions filed by the Director of the Bureau of Prisons." *United States v. Hewlett*, No. 5:93-CR-00137-SLB-SGC-2, 2020 WL 7343951, at *4 (N.D. Ala. Dec. 14, 2020) (quoting *United States v. Gist*, No. 20-13481, 2020 WL 7227282, at *1 (11th Cir. Dec. 8, 2020)). Thus, while § 1B1.13 provides useful guidance for addressing motions for compassionate release, the Court concludes that it is not bound by this guidance.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

> *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. *Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id*.

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

As an initial matter, the Court recognizes that Defendant has exhausted his administrative remedies in this case, and the Government concedes that the exhaustion requirement is satisfied. ECF No. [156] at 16. Nevertheless, as explained below, Defendant's Motion fails to satisfy the remaining considerations under the compassionate release analysis.

With regard to the "extraordinary and compelling reasons" analysis, Defendant fails to demonstrate that compelling circumstances exist under § 3582(c). CDC guidance indicates that adults of any age with the following health conditions are at increased risk of severe illness due to COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down

Syndrome, heart conditions, such as heart failure, coronary artery disease, and cardiomyopathies, immunocompromised from solid organ transplant, obesity, severe obesity, pregnancy, sickle cell disease, smoking, and type 2 diabetes.[3] In addition, adults of any age with the following conditions might be at an increased risk for severe illness: asthma (moderate-to-severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state from blood or bone marrow transplant, immune deficiencies of HIV, use of corticosteroids, or use of other immune weakening medicines, neurologic conditions such as dementia, liver disease, overweight, pulmonary fibrosis, thalassemia, and type 1 diabetes.[4]

Defendant argues that he is at an increased risk of contracting a severe case of COVID-19 because he suffers from several health conditions, including hypertension, high cholesterol, cardiac risk factors, and prediabetes. ECF Nos [155-1]. Defendant further states that he was diagnosed with pneumonia and hemoptysis, has difficulty breathing, has only one lung as a result of a thoracotomy in 2012, and is currently scheduled for an oncology follow-up and "CT" to check for bronchogenic carcinoma. *Id*. In its Response, the Government argues that these conditions are neither extraordinary not compelling, and notes that they are nonetheless being actively and effectively managed within the BOP's medical facilities.

The Court is certainly sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities. However, a review of Defendant's medical records does not indicate that his conditions are severe enough to warrant a sentence reduction.[5]

---

[3] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021).

[4] *Id*.

[5] *See id.* (noting that high blood pressure or hypertension *might* increase an individual's risk of contracting a severe case of COVID-19 (emphasis added)).

8

Additionally, Defendant's medical records reveal that he recovered from pneumonia and hemoptysis, his lungs are clear, and that the BOP is otherwise actively monitoring his respiratory conditions. Defendant is 48 years old and fails to demonstrate any of his present ailments are terminal, that they substantially diminish his ability to provide self-care within the correctional facility, or that they are not being properly attended to by the BOP.

Moreover, Defendant does not persuade the Court that current procedures in place or resources available at Moshannon Valley are insufficient to protect him from contracting the virus. Indeed, the BOP website indicates that at Moshannon Valley, only 4 inmates and no staff members have tested positive for COVID-19.[6] Moreover, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release."). Thus, Defendant has not met his burden to demonstrate that extraordinary and compelling reasons exist to support his request for compassionate release or sentence modification.

The Government maintains that even if extraordinary and compelling circumstances existed in this case, Defendant's request is nonetheless unwarranted because Defendant is a foreign national who is subject to deportation and removal upon his release. ECF No. [155] at 18-20. The Court agrees. At the time of sentencing, the Court recognized that Defendant is an aggravated felon

---

[6] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 15, 2021).

for immigration purposes, and is therefore subject to removal based on his conviction. ECF No. [124] at 20. Additionally, Defendant's plea agreement explicitly warned of the immigration consequences that Defendant might face upon pleading guilty to the charged offense.[7] Thus, as the Government notes, even if the Court were to grant the instant Motion, Defendant could not be released to home confinement, but would be transported into ICE custody during the pendency of the removal proceedings. *See United States v. Camacho-Duque*, No. 18-80238-CR, 2020 WL 5951340, at *7 (S.D. Fla. Oct. 5, 2020) ("[R]elease from BOP custody, in Defendant's case, does not mean release from government custody. Because Defendant is subject to an immigration 'hold' or detainer, upon execution of this Order, the BOP will surrender Defendant to ICE. From that point forward, Defendant, having been convicted of an 'aggravated felony' within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B), will be subject to mandatory, indefinite detention—that is, detention until she either prevails on her claim for relief or is deported from the United States.").

Additionally, and equally important, releasing Defendant into ICE custody would likely be harmful to Defendant's interests in securing proper medical care for his medical issues. "Were the Court to grant Defendant compassionate release, he may end up leaving [Moshannon Valley] only to enter an immigration facility that is less equipped to address his medical needs, and where he is

---

[7] *See* ECF No. [64] at ¶ 16 ("Defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a natural-born citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to a narcotics violation, removal is presumptively mandatory. In addition, under certain circumstances, denaturalization may also be a consequence of pleading guilty to a crime. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. Defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's denaturalization and automatic removal from the United States.").

no less exposed to [COVID-19]." *United States v. Perez Solorio*, No. 3:11-CR-138-J-32JRK, 2020 WL 6292558, at *2 (M.D. Fla. Oct. 27, 2020). Considering the course of treatment Defendant has received to date at Moshannon Valley for his medical issues, the Court is reluctant to grant release into circumstances that would likely place Defendant at greater medical risk. *See United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020); *see also United States v. Joaseus*, No. 9:16-CR-80011, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020) (noting that, upon completion of the term of imprisonment, the defendant will be surrendered to ICE custody to await removal proceedings and will likely be held at an immigration detention facility, which, "like prisons, have had confirmed cases of COVID-19 and are implementing measures to respond to the spread of the disease in their populations," and concluding that a sentence reduction was unwarranted because the defendant presented no indication that was a lesser likelihood of exposure to COVID-19 at an immigration detention facility than at a BOP facility); *see also United States v. Chavez*, No. 1:95-CR-00361, 2020 WL 2322917, at *2 (S.D. Fla. May 11, 2020) (same).[8]

In sum, the Court is unpersuaded that Defendant has presented extraordinary and compelling circumstances to warrant compassionate release.[9] As such, Defendant's Motion is denied.

---

[8] *See also Matos v. Lopez Vega*, No. 20-cv-60784, 2020 WL 2298775, at *9 (S.D. Fla. May 6, 2020) (discussing the allegedly inadequate conditions at ICE facilities during COVID-19); *Gayle v. Meade*, No. 20-21553-CIV, 2020 WL 2086482, at *4 (S.D. Fla. Apr. 30, 2020) (detailing the ways in which ICE has failed in its duty to protect the safety and general well-being of detainees at immigration detention centers), *order clarified*, No. 20-21553-CIV, 2020 WL 2203576 (S.D. Fla. May 2, 2020); *Fraihat v. U.S. Immigration & Customs Enf't*, 445 F. Supp. 3d 709, 719 (C.D. Cal. 2020) (describing ICE's failure to ensure minimum lawful conditions of confinement at immigration detention facilities across the country).

[9] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting his release, the Court does not need to address the two remaining compassionate release considerations under § 3553(a) and § 3142(g).

Case No. 18-cr-60250-BLOOM

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [148]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 16, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Rolando Rodriguez-Campana
19117-104
CI Moshannon Valley
555 GEO Drive
Philipsburg, PA 16866